Ramon Rodriguez RODRIGUEZ,
et al., Plaintiffs,

v.

SHELL OIL COMPANY,
et al., Defendants.

Civil Action No. H–96–1790.

United States District Court,
S.D. Texas,
Houston Division.

Nov. 6, 1996.

Charles Stein Siegel, Misko Howie & Sweeney, Dallas, TX, Stephen D. Susman, Susman Godfrey L.L.P., Houston, TX, Fred Misko, Jr., Dallas, TX, for Ramon Rodriguez Rodriguez.

John Michael Dorman, Liddell Sapp Zivley Hill & Laboon, Houston, TX, Burt Ballanfant, Shell Oil Company, Legal Dept., Houston, TX, Richard W. Staff, John L. Hill, Jr., Liddell Sapp Zivley Hill & Laboon, Houston, TX, for Shell Oil Company.

Terence M. Murphy, Jones Day Reavis & Poque, Dallas, TX, James Stanley Teater, Dallas, TX, for Standard Fruit & Steamship

Company, Dole Food Company Inc., Dole Fresh Fruit Com.

Thomas Jeffrey Brandt, Sheinfeld Maley & Kay, Houston, TX, for Dead Sea Bromine Co. Ltd., Bromine Compounds Ltd.

Michael Lamar Brem, Baker & Botts, Houston, TX, F. Walter Conrad, Baker & Botts, Houston, TX, for Dow Chemical Company.

D. Ferguson McNiel, Vinson & Elkins, Houston, TX, for Occidental Chemical.

Samuel E. Stubbs, William D. Wood, Fulbright & Jaworski, Houston, TX, for Chiquita Brands, Chiquita Brands International, Inc.

Michael L. Rice, Jones Day Reavis & Pogue, Dallas, TX, Terence M. Murphy, Jones Day Reavis & Pogue, Dallas, TX, James Stanley Teater, Dallas, TX, for Standard Fruit Company.

## MEMORANDUM AND ORDER

LAKE, District Judge.

Pending before the court are Defendants' Motion to Dismiss for Forum Non Conveniens and International Comity and to Enjoin Further Litigation (Docket Entry No. 4) and Plaintiffs' Motion to Strike Third–Party Claims on Grounds of Fraudulent Joinder or, in the Alternative, Motion to Sever Third–Party Claims (Docket Entry No. 24). The history of this case is recited in *Delgado v. Shell Oil Co.*, 890 F.Supp. 1315 (S.D.Tex. 1995), *Delgado v. Shell Oil Co.*, 890 F.Supp. 1324 (S.D.Tex.1995), and in the court's June 28, 1996, Memorandum and Order denying the Rodriguez plaintiffs' motion to remand this action, 932 F.Supp. 177 (S.D.Tex.1996).

### I. *Forum Non Conveniens*

In *Delgado* the court concluded that Honduras is an available and adequate forum to the plaintiffs in the three actions involving Honduran plaintiffs that were dismissed under the doctrine of forum non conveniens, *Jorge Carcamo*, *Valdez*, and *Isae Carcamo*. 890 F.Supp. at 1355–1365. The court also considered and balanced the various private and public interest factors and concluded that they weighed in favor of dismissal under the doctrine of forum non conveniens. Those rulings and the analysis that underlay them are the law of the case, and the court sees no reason to repeat them in this Memorandum and Order. Instead, the court will limit its analysis to evidence that the plaintiffs argue was not addressed in *Delgado*.[1]

Plaintiffs ask the court to take judicial notice of opinions of the attorney general of Honduras[2] and of Honduran legislators who preside over commissions of the National Congress of Honduras[3] that Honduras recognizes the rights of its citizens to file suits in foreign countries; that Honduras would not provide an adequate forum for plaintiffs because, due to a lack of experience and resources and different procedures, Honduran courts are not as efficient as American courts in adjudicating mass tort litigation involving American defendants; and that a Honduran court would not have jurisdiction over plaintiffs' claims. Defendants respond, and plaintiffs concede, that a Honduran court has accepted jurisdiction over a lawsuit filed against defendants, including manufacturer defendants, by Honduran plaintiffs whose claims were dismissed in *Delgado* on forum non conveniens grounds.[4]

The court is not persuaded that plaintiffs' new evidence invalidates the court's conclusions in *Delgado* that Honduras is an available and adequate forum for the plaintiffs. Although the court is sensitive to the desires expressed by the Honduran attorney general

1. Although the precise evidence plaintiffs now present was not submitted in *Delgado*, similar evidence was presented and evaluated by the court in *Delgado*. 890 F.Supp. at 1361.

2. Plaintiffs' Request for Judicial Notice of the Laws of the Republic of Honduras and Memorandum in Support Thereof, Docket Entry No. 26.

3. Plaintiffs' Notice of Supplemental Authority in Opposition to Defendants' Motion to Dismiss on Forum Non Conveniens and Comity Grounds, Docket Entry No. 28.

4. *See Augusto Acosta Ramos, et al. v. Shell Oil Co., et al.*, First Civil Court, Central District, Tegucigalpa, Republic of Honduras; order of August 23, 1995, concluding that plaintiffs, having filed the lawsuit in Tegucigalpa, lacked standing to challenge the court's jurisdiction. Exhibit K to Defendants' Motion to Dismiss, Docket Entry No. 4.

and legislators that their citizens' choice of forum be respected by foreign courts, the United States Supreme Court has ruled that the wishes of foreign plaintiffs have little weight in the decisions by a United States court whether to accept jurisdiction. In *Piper Aircraft v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), the Court stated:

> When the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.

At 255, 102 S.Ct. at 266 (footnote omitted). The *Piper* Court also observed that dismissal may be warranted when a foreign plaintiff "chooses a particular forum, not because it is convenient, but solely in order to ... take advantage of favorable law." At 249 n. 15, 102 S.Ct. at 262 n. 15. As the court explained in *Delgado*, one of the main reasons plaintiffs brought these actions in Texas state courts, even though none of the plaintiffs live in Texas and none of the conduct of the defendants of which plaintiffs complain occurred in Texas, was so that plaintiffs could avail themselves of then existing Texas law that precluded a state court from dismissing cases under the doctrine of forum non conveniens. *Delgado*, 890 F.Supp. at 1335.[5]

## II. *Motion to Strike*

In its June 28, 1996, Memorandum and Order denying plaintiffs' motion to remand the court rejected plaintiffs' fraudulent joinder arguments.[6] The court will nevertheless address their arguments again, and in greater detail, to eliminate any ambiguity about the basis for its rulings.

Plaintiffs argue that the court should strike the third-party claims against Dead Sea and remand the case to state court because Dead Sea was "fraudulently joined." Relying on Texas substantive law, plaintiffs argue that it is apparent that Dead Sea was fraudulently joined because there is no right of contribution when a plaintiff has settled with a third-party defendant or has filed pleadings disclaiming any intention of seeking recovery for damages from that defendant. As the court has previously held, however, the question of fraudulent joinder is not implicated in this case. *Delgado*, 890 F.Supp. at 1342.

The proper question is whether the court lacks jurisdiction pursuant to 28 U.S.C. § 1359, which states that "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." In *Delgado* the court concluded that plaintiffs' first two arguments—that plaintiffs disclaimed any damages for exposure to Dead Sea Products and that plaintiffs had settled with Dead Sea—failed to show a violation of § 1359 because neither argument established that Dead Sea had been collusive-

---

5. Plaintiffs also argue that a Texas state court's recent denial of defendants' motion to apply Costa Rican law in another DBCP case, *Borja v. Dow Chemical Co.*, means that foreign law does not apply in DBCP cases brought by foreign plaintiffs. (August 29, 1996, order of the 116th District Court of Dallas County, Texas, Exhibit C to Plaintiffs' Supplemental Authority in Opposition to Defendants' Motion to Dismiss on Forum Non Conveniens Grounds, Docket Entry No. 37) Without knowing the basis for the state court's five-line order or its scope, the court is not persuaded that it undermines the court's forum non conveniens analysis in *Delgado*.

6. *See Rodriguez v. Shell Oil Co.*, 932 F.Supp. 177, 180 (S.D.Tex.1996) ("The balance of plaintiffs' motion argues that remand is required because the court lacks subject matter jurisdiction. The

court has previously rejected these arguments and adheres to its rulings."). In Plaintiffs' Motion to Remand at pp. 30–35 (Docket Entry No. 3) plaintiffs argued, among other things, that the court lacked subject matter jurisdiction under the FSIA because Dead Sea had been fraudulently joined. Specifically, plaintiffs alleged:

(a) "The [third-party] claims against Dead Sea are baseless because plaintiffs seek no damages for exposure to Dead Sea products;"

(b) "The third-party claims against Dead Sea are baseless because plaintiffs have settled with Dead Sea;" and

(c) "The defendants ... and Dead Sea settled the third-party claims between them."

*Id.* Plaintiffs make the identical arguments in the pending motion to strike or sever.

·ly joined. 890 F.Supp. at 1342–1343. Plaintiffs have not persuaded the court that its earlier conclusion, which is the law of the case, is incorrect. *See Copeland v. Merrill Lynch & Co.,* 47 F.3d 1415 (5th Cir.1995) ("The law of the case doctrine provides that once a court of competent jurisdiction decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case.").

Plaintiffs also argue that in its July 11, 1995, Memorandum and Order remanding *Rodriguez* the court at least suggested that Texas substantive law governs the effect of the settlement agreement between plaintiffs and Dead Sea and that under Texas law Dead Sea is not a proper party. Plaintiffs point to the following statement by the court:

> The court is persuaded that it should not grant leave to serve third-party petitions on Dead Sea in either *Rodriguez* or *Erazo.* In addition to amending their pleadings and filing stipulations reflecting their intention not to pursue relief from injuries arising from Dead Sea's products, plaintiffs have also entered settlement agreements with Dead Sea. Under these circumstances the court is unwilling to usurp the state courts' authority to examine, in the first instance, whether Dead Sea should be impleaded into the case at this point in the litigation. *Cf. International Primate Protection League v. Tulane Educational Fund,* 500 U.S. 72, 86–89, 111 S.Ct. 1700, 1709–10, 114 L.Ed.2d 134 (1991) (remanding action against federal agency instead of upholding dismissal for plaintiffs' lack of federal constitutional standing because post-remand determination whether federal agency is an indispensable party and whether plaintiffs should be allowed to substitute an individual federal official for the federal agency would be determined by state law).

890 F.Supp. at 1350.

To understand the court's ruling a review of the procedural background in *Rodriguez* is

necessary. In *Rodriguez* Shell and Chiquita filed third-party petitions against Dead Sea and Ameribrom on April 6, 1994. Before the 229th District Court of Jim Hogg County, Texas, had granted leave to serve the third-party petitions, Dead Sea removed the case to the Laredo Division of this district. The case was later transferred to this court and consolidated with the other cases addressed in *Delgado.* In July of 1995 the court concluded that Dead Sea's removal was premature because Tex.R.Civ.P. 38(a) required Shell and Chiquita to obtain leave of court before serving Dead Sea with a third-party petition. *Delgado,* 890 F.Supp. at 1344–46. As an alternative argument for avoiding removal, defendants requested that this court cure the prematurity problem by granting them leave to implead Dead Sea under 28 U.S.C. §§ 1447(a) and 1448 and Fed.R.Civ.P. 14(a). In the passage from *Delgado* quoted above the court rejected defendants' request and concluded that the state court should determine as a matter of state procedural law whether Shell and Chiquita's third-party petition should be permitted. The court did not speculate as to which substantive law the state court would apply under state choice of law rules, although the court's subsequent statement in its *forum non conveniens* analysis makes it clear that the court did not consider Texas substantive law as an alternative. *Id.* at 1370.[7]

Events transpiring after *Rodriguez* was remanded to state court made it unnecessary, however, under Texas procedure for the state court to determine whether Dead Sea should be impleaded as a third-party defendant. On July 11, 1995, when the court remanded *Rodriguez* to state court the Standard Fruit defendants had on file a special appearance objecting to jurisdiction. On February 2, 1996, the district court denied the special appearance, and the court's order was filed on February 5, 1996. On March 4, 1996, Standard Fruit, without obtaining leave of court, filed a third-party petition naming Dead Sea, Bromine Compounds, Ltd., and

---

**7.** The court concluded that it "need not decide what law will apply because the court is convinced that the two bodies of law with which this court is 'at home,' Texas law and federal law, will not apply." *Delgado,* 890 F.Supp. at 1370.

"Of the many potential bodies of substantive law that might apply to these cases, Texas is the least likely to govern resolution of any aspect of plaintiffs' cases." *Id.* at 1370 n. 118.

AMVAC as third-party defendants, and on March 6, 1996, Dead Sea and Bromine Compounds, Ltd., again removed the case to federal court. In its June 28, 1996, Memorandum and Order the court concluded that Standard Fruit served the third-party petition as a matter of right under Tex.R.Civ.P. 38(a) because Standard Fruit's original answer filed subject to the special appearance did not become effective until the special appearance was denied. After that Standard Fruit had thirty days to file the third-party petition without leave of court. The propriety under Texas procedure of Shell and Chiquita's failure to seek leave of court before filing third-party petitions against Dead Sea was thus mooted. Because it was unnecessary for the state court to decide whether Shell and Chiquita should be granted leave under Tex.R.Civ.P. 38(a) to implead Dead Sea as a third-party defendant, the court is not persuaded by plaintiffs' argument that it should now engage in such an analysis.

■ Lastly, plaintiffs argue that the facts are now different from those at the time of the July 11, 1995, Memorandum and Order in *Delgado* because of November 15, 1995, settlement agreements between defendants and Dead Sea to limit Dead Sea's liability. The settlement agreements, plaintiffs contend, show that the "sole basis for jurisdiction in this case is a collusive third-party claim which was 99% settled before it was filed." Again, however, that argument was raised and rejected in *Delgado*. During a January 11, 1996, hearing on Plaintiffs' Motion for Relief from Final Judgment the court stated:

> The court makes the following rulings in connection with this motion.
>
> First, the court concludes that Dead Sea's remaining potential exposure to defendants' claims for contribution are not de minimis in any of the actions, even assuming, which the court does not, that de minimis is the correct criteria.
>
> Second, the court concludes that the claims of the defendants against Dead Sea for contribution in the foreign actions are not moot. The defendants still have substantial contribution claims against Dead Sea, and a case or controversy still exists between the defendants and Dead Sea.
>
> Third, the court concludes that federal jurisdiction in this court, based on the presence of Dead Sea, does not offend 28 U.S.C. § 1359; and, in particular, the court is not persuaded that the defendants have acted in bad faith in filing their third-party claims against Dead Sea.... [8]

In *Rodriguez* defendants and Dead Sea share the same relationship pursuant to the settlement agreements as they did in *Delgado*. Although the agreements settle the method for allocating the parties' joint liability in the event of an adverse judgment and establish a maximum percentage of contribution for Dead Sea, Dead Sea may still contest its liability and dispute its actual market share. As the court explained in *Delgado*, "there is evidence of the use of Israeli DBCP in at least one of the plaintiffs' home countries implicated by plaintiffs' pleadings in each of these six consolidated cases," 890 F.Supp. at 1343 n. 35, and more specifically, "there is some evidence ... of Dead Sea's product having been used in Honduras." [9] Because the *Rodriguez* defendants have viable contribution claims against Dead Sea, and a case or controversy exists between defendants and Dead Sea, as in *Delgado*, the court is not persuaded that the settlement agreements between defendants and Dead Sea show that Dead Sea was collusively or fraudulently joined.[10]

### III. *Motion to Sever*

■ Alternatively, assuming that viable third-party claims exist, plaintiffs argue that

---

8. Transcript of January 11, 1996, motion hearing at p. 19, Exhibit 1 to Defendants' Opposition to Plaintiffs' Motion to Strike, Docket Entry No. 32.

9. Transcript of January 11, 1996, motion hearing at p. 16.

10. In their motion to strike plaintiffs make a passing reference to the standards for joining a third-party defendant under Fed.R.Civ.P. 14(a). Because the court has concluded that defendants have viable contribution claims against Dead Sea, Dead Sea "is or may be liable to [defendants] for all or part of the plaintiff[s'] claim." Fed.R.Civ.P. 14(a). Accordingly, a motion to strike the third-party claims against Dead Sea would be inappropriate.

the court should sever those claims. Plaintiffs, however, have failed to raise any new arguments in support of severance apart from those already rejected by the court in connection with plaintiffs' motion to strike. There is no allegation that "[t]rial of the third-party contribution claims would unduly complicate or overburden any trial of the primary suit." *United States v. Kramer,* 770 F.Supp. 954, 959 (D.N.J.1991). In fact, a severance would be burdensome for defendants, Dead Sea, and the judicial system as a whole because it would require multiple proceedings to resolve these related issues. Accordingly, the motion to sever will be denied.

### IV. *Conclusion*

For the reasons stated in this Memorandum and Order and in *Delgado* the court concludes that Defendants' Motion to Dismiss on Forum Non Conveniens Grounds should be conditionally granted subject to the same conditions as the dismissals in *Delgado.* Plaintiffs' Motion to Strike Third–Party Claims on Grounds of Fraudulent Joinder, or, in the Alternative, Motion to Sever Third–Party Claims is **DENIED.** Defendants and third-party defendants are **ORDERED** to file and deliver to chambers by November 21, 1996, agreements regarding conditions of dismissal in the form of defendants and third-party defendants' Amended Agreements in *Delgado*[11] that satisfy the conditions of ¶ V.B.1.a.(2) through (5) of the court's Memorandum and Order in *Delgado,* 890 F.Supp. at 1372–1373, and the court's Order of October 6, 1995, in *Delgado.*[12] Plaintiffs will file and deliver to chambers by November 26, 1996, any objection to defendants and third-party defendants' agreements. Defendants' request for injunctive relief will be granted to the same extent it was granted in *Delgado* for the reasons articulated in *Delgado,* 890 F.Supp. at 1373–74, and in the court's October 27, 1995, Order in *Delgado.*[13]

---

11. Docket Entry Nos. 384 and 385 in *Delgado.*

12. Docket Entry No. 372 in *Delgado.*

13. Docket Entry No. 392 in *Delgado.*