**Ernst Otto STALINSKI, Plaintiff,**

v.

**Alejandro A. BAKOCZY, Chiquita Brands International, Inc., Tela Railroad Company, and Chiquita International Trading Company, Defendants.**

**No. C–1–97–1006.**

United States District Court,
S.D. Ohio,
Western Division.

Nov. 3, 1998.

Robert Edward Manley, Manley Burke Lipton & Cook, Cincinnati, OH, for plaintiff.

James Eugene Burke, Keating, Muething & Klekamp, Cincinnati, OH, David Warren Hills, Chiquita Brands, Inc., Cincinnati, OH, for defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

DLOTT, District Judge.

### ORDER

This matter comes before the Court to consider the Defendants' Motion to Dismiss. (Doc. # 25). For the reasons and analysis set forth below, the Defendants' Motion is hereby **GRANTED.**

### I. BACKGROUND FACTS

This action arose out of a commercial dispute that took place in Honduras during 1989 and 1990. In 1989, Plaintiff Ernst Otto Stalinski, a German citizen, was acting as the Honduran agent and representative of Fyffes PLC, an Irish banana company and one of Defendant Chiquita Brands International's competitors in the banana export business. (A.C.¶¶ 5, 8.) Plaintiff's job was to procure fruit purchase contracts with independent banana growers in Central America for Fyffes and to oversee the shipment of bananas to Fyffes and its customers. (A.C.¶ 5.) Plaintiff's Amended Complaint states several causes of action against the Defendants: Tortious Interference with Business Relations, Malicious Prosecution, Abuse of Process, Violation of the Law of Nations, and Fraud. Plaintiff essentially asserts that the Defendants used fraudulent lawsuits and unlawfully obtained court orders to prevent Plaintiff from fulfilling his contract with Fyffes to supply Honduran bananas.

In 1989, Stalinski executed a contract with CAGSSA, an independent banana grower in Honduras, for the shipment of bananas to Fyffes. (A.C.¶ 8.) Between March 1990 and June 1990, Fyffes began to purchase and ship fruit from CAGSSA and Stalinski personally supervised the shipments. (A.C.¶ 18.) Defendants state that as of 1989, Chiquita, through its subsidiaries Tela Railroad Company ("Tela") and Chiquita International Trading Company ("CITCO"), had fruit purchase contracts with various Honduran banana growers, including CAGSSA. (Def.'s Mem.Supp.Mot.Dism. at 3; *see also* A.C. ¶ 8.). According to Defendants, Chiquita's fruit purchase agreement with CAGSSA obligated CAGSSA to sell its entire production of bananas to CITCO. The contract also required CAGSSA to give Chiquita two years notice before terminating the agreement and to repay any outstanding debt to Chiquita upon termination. Chiquita supplied financing to CAGSSA through a loan agreement Tela had with CAGSSA under which Tela had advanced $2.5 million to CAGSSA. (Def.'s Mem. Supp.Mot.Dism. at 3; *see also* A.C. ¶ 16.). Tela's loan was secured by a mortgage on CAGSSA's farms, a lien on CAGSSA's fruit, and a requirement that CAGSSA's fruit be delivered to Tela. (*Id.*)

On March 1, 1990 Defendant Chiquita filed a suit on the mortgage lien against CAGSSA in the Second Civil Court in San Pedro Sula, Honduras. (A.C.¶ 16.) The Plaintiff's Amended Complaint states that CAGSSA deposited payment of the lien with the court which was accepted by Tela. The court then entered an order canceling the lien.(Id.) Both Plaintiff and Defendants state that on March 21, 1990 CITCO filed a suit against CAGSSA in the Third Judicial Civil Court of San Pedro Sula. (A.C. ¶ 17; *see also* Def.'s Mem.Supp.Mot.Dism. at 4). Defendants state that this was an emergency civil complaint requesting an order to protect its contractual interests in the CAGSSA fruit that was being shipped to Fyffes. Plaintiff states that this suit was duplicative of the first suit in that it was for the same debt and lien, and was therefore, fraudulent and violated Honduran law.

In the second suit, the court appointed Amilcar Orellana as receiver for the bananas acquired by Plaintiff for shipment to Fyffes. (A.C.¶ 17.) According to Plaintiff, Orellana acted on behalf of and under the direction of Defendants, and was represented by Defendants' local attorney, Leonel Medrano Irias. (*Id.*) Plaintiff states in his Amended Complaint that from March

21, 1990 and June 8, 1990, Chiquita's "paramilitary" agents boarded ships by Fyffes and destroyed banana cargo that was being loaded under the supervision of Plaintiff, subjecting Plaintiff to gun fire attack. (A.C.¶18.)

Defendants state that on April 27, 1990, Amilcar Orellana filed a criminal complaint against Stalinski charging him with violating various court orders prohibiting the shipment of CAGSSA fruit to Fyffes and a warrant was issued for his arrest. (Def.'s Mem.Supp.Mot .Dism. at 4). Plaintiff asserts that on April 28, 1990, Defendant Bakoczy and Medrano went to Plaintiff's hotel, the Hotel Gran Sula in San Pedro Sula, Honduras, with several armed companions and insisted that the manager of the hotel give them access to Plaintiff's room.[1] (A.C.¶19.) The manager asked Medrano for a search or arrest warrant but none was produced. (A.C.¶22.) Plaintiff claims that a hotel employee warned him that someone was "seeking Plaintiff in a menacing manner" and he escape through a back door of the hotel. Plaintiff ran to the residence of a friend and was never arrested. (A.C.¶21.) Defendants specifically deny that they ever undertook or authorized any attempt to physically detain or harm Plaintiff.

Finally, Plaintiff asserts that Medrano, Chiquita's local attorney, filed a copy of the arrest order in a 1995 court proceeding. The arrest order was signed by Judge Galindo from a court in Puerto Cortes, approximately fifty miles from where the Plaintiff's hotel was located. (A.C.¶25.) According to Plaintiff, the police department in San Pedro Sula is required by law to keep records of all arrest warrants, but there is no record of an arrest warrant for Plaintiff. (Id.) The above events are the allegations underlying Plaintiff's Amended Complaint.

Plaintiff filed a Honduran civil action against Defendants CITCO and Tela in October 1994. In December 1995, Plaintiff brought Honduran criminal charges against former and current Chiquita employees, including Defendant Bakoczy. These suits still are pending and Defendants assert that the Honduran suits are based on the same allegations as Plaintiff's Amended Complaint in this Court.

## II. DEFENDANT'S MOTION TO DISMISS

In their Motion to Dismiss, Defendants assert four separate grounds for dismissal—a) forum non conveniens, b) international abstention c) the "act of state doctrine," and d) failure to state a claim upon which relief can be granted. After weighing the evidence presented by both Defendants and Plaintiff, the Court finds that Honduras is an adequate, alternative forum and more convenient than the Ohio forum. Consequently, the Court hereby grants Defendants' Motion to Dismiss on grounds of forum non conveniens.[2]

**Forum Non Conveniens**

"The principle of forum non conveniens comes down to this: a trial court may dismiss a suit over which it would normally have jurisdiction if it best serves the convenience of the parties and the ends of justice." *Kamel v. Hill–Rom Co.*, 108 F.3d 799 (7th Cir.1997). The defendant bears the burden of proof on all elements of the forum non conveniens analysis. *See Torres v. Southern Peru Copper Corp.*, 965 F.Supp. 899, 902 (S.D.Tex.1996) *aff'd.* 113 F.3d 540 (5th Cir.1997). A party moving in the trial court to dismiss on grounds of forum non conveniens has the burden of showing: (1) the existence of an adequate alternative forum, and (2) the balance of private and public interest factors favors dismissal.

---

1. Plaintiff offers the deposition of Marcos Munoz, the hotel manager, to support these claims.

2. Because dismissal on forum non conveniens grounds will independently dispose of all of Plaintiff's claims, the Court will not address Defendants' other grounds for dismissal.

*See Ceramic Corp. of America v. Inka Maritime Corp.,* 1 F.3d 947 (9th Cir.1993).

### 1. Alternative Forum

The doctrine of forum non conveniens presupposes the availability of an alternative forum in which the defendant may be sued. *See Dowling v. Richardson–Merrell,* 727 F.2d 608 (6th Cir.1984). Therefore, the defendant seeking a forum non conveniens dismissal must first identify an adequate alternative forum. *See id.* This first step is a two-part inquiry: availability and adequacy. *See Kamel,* 108 F.3d at 802. An alternative forum is available if all the parties are amenable to process and are within the forum's jurisdiction. *See id.* at 803. An alternative forum is adequate when the parties will not be deprived of all remedies or treated unfairly. *See id.* (citing *Piper Aircraft v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)).

#### a) Availability

The Defendants have met their burden in establishing that Honduras is an available forum for this controversy because the all Defendants are subject to personal jurisdiction in Honduras. *See Piper Aircraft,* 454 U.S. at 254 n. 22 (stating that the requirement satisfied if defendant "amenable to process" in the foreign forum). Defendant Tela is domiciled in Honduras, Defendant CITCO has consented to jurisdiction, and Defendants Chiquita and Bakoczy have offered to consent to jurisdiction on the record. *See Watson v. Merrell Dow Pharmaceuticals,* 769 F.2d 354 (6th Cir.1985) (Defendant "clearly met its threshold burden for entitlement to a forum non conveniens dismissal by consenting to United Kingdom jurisdiction."). Plaintiff states that Defendants CITCO and Tela filed a motion to dismiss in Plaintiff's Honduran civil suit, claiming that the Honduran courts did not have jurisdiction. (Plaintiff's Memo in Opp., Ex.4). Plaintiff further asserts that Defendant Bakoczy is a "fugitive from justice" in Honduras, as criminal charges against him remain pending. (Plaintiff's Memo in Opp., Ex.6). Plaintiff claims, therefore, that the Defendants' consent to jurisdiction is illusory.

Defendants respond, however, that Defendant Bakoczy traveled voluntarily to Honduras and testified before the Honduran Criminal Court. The Honduran Court has issued "A Letter of Freedom" based on its finding that there is no merit to the charges against him. (Def. Supp. Brief in Supp. of Mot. to Dism., Attach. D). Further, the Defendants state that the Honduran trial court issued a ruling rejecting the legal arguments and defenses raised in Tela's and CITCO's motion to dismiss. Therefore, regardless of the defenses Defendants previously raised in the Honduran civil action, it appears that they have consented to the jurisdiction of the Honduran courts and are "amenable to process" in that forum.

#### b) Adequacy

The adequacy of the alternative forum is a separate inquiry. *See Piper Aircraft,* 454 U.S. at 254 n. 22, 102 S.Ct. 252; *Mercier v. Sheraton International, Inc.,* 981 F.2d 1345, 1350 (1st Cir.1992). An alternative forum may be inadequate even though the defendant is amenable to process, if "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft,* 454 U.S. at 254, 102 S.Ct. 252. The Defendants meet their burden of demonstrating that the Honduran forum is adequate by offering the affidavit of Dr. Gutierrez, Professor of Commercial Law at the University of Honduras, which states that Honduran law provides analogous causes of action and adequate remedies for Plaintiff's alleged claims in this case. (Gutierrez Aff. ¶¶ 17–24). In addition, Gutierrez states that Plaintiff's claims will not be barred by the statute of limitations in Honduras. (*Id.* ¶ 23).

The Plaintiff does not directly dispute that he may seek redress for his claims under Honduran law or that his claims are not prohibited by the statute of limitations

in Honduras. Rather, the primary contention of the Plaintiff is that the Honduran forum is inadequate due to the "widespread corruption" of the Honduran courts. Plaintiff argues that this corruption has prevented him from obtaining redress in his Honduras actions and asks this Court to sit in judgment upon the integrity of the entire Honduran justice system.

As noted by one district court, "the 'alternative forum is too corrupt to be adequate' argument does not enjoy a particularly impressive track record." *Eastman Kodak Co. v. Kavlin*, 978 F.Supp. 1078, 1084 (S.D.Fla.1997). A number of courts have rejected this argument. *See, e.g. El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 678 (D.C.Cir.1996) ("A foreign forum is not inadequate merely because it has less favorable substantive law, because it employs different adjudicative procedures, or because of general allegations of corruption in the judicial system.") (citations omitted); *Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974 (2nd Cir.1993) (refusing to find Venezuela courts an inadequate forum despite charges of corruption); *Mercier v. Sheraton Int'l. Inc.*, 981 F.2d 1345, 1351 (1st Cir.1992) (finding conclusory allegation by female plaintiff of Turkish courts' "profound" bias against Americans and women insufficient to show inadequacy of Turkish forum); *Torres v. Southern Peru Copper Corp.*, 965 F.Supp. 899, 900 (S.D.Tex.1996) (finding that Peruvian judicial system was not so corrupt as to render Peru an inadequate alternative forum); *Banco Mercantil, S.A. v. Hernandez Arencibia*, 927 F.Supp. 565, 567 (D.Puerto Rico 1996) (rejecting claim that courts of Dominican Republic were so corrupt as to provide an inadequate alternative forum).

The Plaintiff contends that the above cited cases are distinguishable from his case because the evidence of corruption in those cases was "infinitesimal and unpersuasive." Plaintiff argues that the evidence in his case is similar to the plaintiff's evidence of corruption in *Eastman Kodak*. The court in *Eastman Kodak*, while hesitant to declare the Bolivian justice system too corrupt to permit fair adjudication of plaintiff's claims, found the plaintiff's evidence of general corruption in the Bolivian courts compelling.[3] *See* 978 F.Supp. at 1085. More importantly, the court found that the plaintiffs presented strong supporting evidence that the Bolivian system is easily manipulated by the well-connected and that the extortionate use of the criminal justice system is routine in ordinary cases. *See id.* at 1086. Furthermore, the plaintiffs in *Eastman Kodak* provided evidence that the defendants had already used the criminal justice system to extort a settlement. *See id.* Despite the fact that private and public interest factors weighed heavily in favor of dismissal, the *Eastman Kodak* court nonetheless denied dismissal on the grounds that Bolivia was an inadequate alternative forum.

Plaintiff in the present case offers the U.S. State Department Human Rights Practices Reports and statements by a recent Honduran Attorney General as evidence that the Honduran courts are under the strong political influence of powerful public and private interests. (Plaintiff's Memo in Opp., Exs. 8, 9, 10, 18, 19). The U.S. State Department Reports primarily discuss problems with the criminal system in Honduras and extrajudicial executions by members of Honduran security forces and are not particularly relevant to the issue of Plaintiff's ability to get relief in the Honduran civil courts. Furthermore, at least one federal court has rejected an attempt to use State Department Reports in a forum non conveniens case. *See El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 678 (D.C.Cir.1996) ("[Plaintiff]'s repeated reliance on a State Department

---

3. The evidence the plaintiffs presented included statements by the Bolivian Minister of Justice about the corruption of the court system,

affidavits of two professors from American universities, and U.S. State Department reports.

report expressing 'concern about the impartiality' of the Jordanian court system is unavailing."); *but see Eastman Kodak*, 978 F.Supp. at 1086 (citing U.S. State Department Report in describing general corruption of Bolivian justice system).

Plaintiff offers statements by the acting Honduran Attorney General of Public Ministry, Dagoberto Mejia, as evidence of the corruption of the Honduran justice system. A Honduran radio transmission on November 11, 1997, pronounced that Mejia agreed with the strong condemnation of "American lawyers and the Council on Hemispheric Affairs against United States banana companies." (Plaintiff's Memo in Opp., Ex. 18). Mejia stated:

In Honduras, companies have always proportioned some type of viaticum, if we can call it that, to judges. Of particular notoriety, is what happened in La Ceiba when judges received a salary from the banana companies. This was not something the public just said [rumors] but something that actually happened. Lawyer Leon Rojes Caron, when acting as judge in La Ceiba was offered money, which he refused, that other judges accepted.... [W]hat is happening is that when this company [Chiquita] tries to defend its main economic interests, it does not have any reservations about seeking protection in any way possible and influencing the judges' decisions in cases which interest them.

*Id.*

Mejia's general accusations do not convince this Court that Plaintiff will have no remedy in the Honduran courts. While Mejia refers to Chiquita later in his statement, it is unclear if the specific example of bribery he offers involving Leon Rojes Caron involves the Defendants. Further, even assuming that there have been instances in which international corporations have bribed or attempted to bribe Honduran judges, this does not prove that the entire system is so biased and corrupt as to render it inadequate. The American justice system has not been wholly free

from bribery either, and the mere existence of some corruption in the Honduran system should not eliminate that forum, which is otherwise much more convenient than the Southern District of Ohio. *See Eastman Kodak*, 978 F.Supp. at 1086.

In addition, Plaintiff offers the affidavit of Daniel Aguilar Herrera, an attorney in Honduras. Aguilar Herrera states:

[A]s a practical matter, Otto Stalinski has no remedy in the Honduran courts against the defendants ... because they are domiciled in Cincinnati, Ohio, and because their enormity in regard to the economy of Honduras gives them so much political power that no litigant in Honduras can win a major case against them without enormous international pressure brought from international institutions.

(Aguilar Herrera Aff. ¶ 13.)

Aguilar Herrera further states that most cases in Honduras are disposed of based on written filings, that Honduras does not have courtrooms, and that the Honduran method for presenting oral testimony does not allow lawyers to directly examine or cross examine witnesses. (Aguilar Herrera Aff. ¶¶ 14, 15.)

This Court finds Aguilar Herrera's statements unpersuasive. Defendants point out that excerpts of Aguilar Herrera's deposition testimony reveal that he did not know that Defendants consented to jurisdiction in Honduras, that he was unable to testify to even a single example of a case in which Chiquita had bribed or pressured a Honduran judge, and that he could not specifically name any members of the Honduran trial court, appellate court or Supreme Court who are corrupt. (Aguilar Herrera Dep. at 37–38, 54–55, 76, 93–96, 102). In addition, Aguilar Herrera testified at his deposition that he is personally aware of ten cases that Chiquita has lost in the Honduran courts. (Aguilar Herrera Dep. at 52). Finally, Defendants' expert Dr. Gutierrez, Professor of Commercial Law at the University of Hondu-

ras, describes that the Honduran civil procedure allows for direct and cross examination through the submission of questions to the presiding judge.[4] (Gutierrez Aff. ¶ 15). Dr. Gutierrez also describes the discovery process of the Honduran court system. (Gutierrez Aff. ¶¶ 12–14).[5]

Finally, Plaintiff offers the affidavit of Judge Reyna Lucinda Argueta to support his allegation of Defendants' attempts to corrupt Honduran judges. According to Judge Argueta's Affidavit, Plaintiff appeared before her in the Criminal Court in Puerto Cortes on November 19, 1996. (Argueta Aff. ¶ 8.) Judge Argueta found that there was no basis for the criminal prosecution of Plaintiff and entered an order dismissing the case. (*Id.*) According to Judge Argueta, two attorneys who identified themselves as attorneys for Chiquita subsequently requested Stalinski's file. (Argueta Aff. ¶¶ 9–10.) Judge Argueta refused them access to the file because court procedure does not allow files to be removed by private persons. (Id. ¶ 10–11.)

Argueta states that in the first week of January 1997, the same two lawyers came to her home and told her that if she would cooperate in the Stalinski matter, Chiquita would ensure support for her in future promotions. (*Id.* ¶ 14.) Argueta contends that when she refused to changed her position one of the attorneys stated, "Your life will change from now on," which she perceived as a threat. (*Id.*) On January 14, 1997, Judge Argueta was fired without a hearing for "inefficiency." (*Id.* at ¶ 16.) On January 17, 1997 Judge Argueta learned that there was a criminal charge against her accusing her of "crime against the State" and an order for her arrest. (*Id.*) Judge Argueta fled Honduras and sought political asylum in Canada. (*Id.* at ¶ 17.) According to Defendant's expert,

Dr. Gutierrez, the criminal charges against Plaintiff are still pending in Puerto Cortes.

Even if the Court accepts that all of Judge Argueta's claims are true, they do not show that the Defendants control the entire judicial system rendering it corrupt and inadequate. Even if true, Judge Argueta's claims prove only that agents of the Defendants attempted to influence her decision regarding the Plaintiff's arrest warrant. This Court cannot infer that the Defendants were in any way involved in the subsequent loss of her position or that her termination was at all related to her decision in Plaintiff's case.

The Defendants note that several federal courts have found Honduras to be an adequate forum for forum non conveniens purposes. *See Timberlane Lumber Co. v. Bank of Am. Nat'l Trust & Savings Ass'n,* 749 F.2d 1378, 1386 (9th Cir.1984) (dismissing abuse of process and malicious prosecution claims in favor of a Honduran forum); *Rodriguez v. Shell Oil Co.,* 950 F.Supp. 187 (S.D.Tex.1996) (dismissing tort claims in favor of a Honduran forum); *Delgado v. Shell Oil Co.,* 890 F.Supp. 1324, 1361 (S.D.Tex.1995) (holding that parties would not be treated unfairly by the courts of Honduras). This Court is not persuaded to hold otherwise. As noted by Defendants in oral argument, the adequacy of the forum is evidenced by the fact that Plaintiff has pursued his claims there. It is anomalous for Plaintiff, who chose to do business in Honduras under Honduran law and subsequently filed suit there, then "to argue to an American court that the [Honduran] system of justice is so endemically incompetent, biased, and corrupt as to not provide an adequate forum for the resolution of [his] ... disputes." *Blanco v. Banco Indus. de Venezuela, S.A.,* 997 F.2d 974, 981–82 (2d Cir.1993).

*Lockman Found. v. Evangelical Alliance Mission,* 930 F.2d 764, 768 (9th Cir.1991) (lack of jury trial did not make Japan an inadequate forum); *Mercier,* 981 F.2d at 1352–53 (different discovery practices in Turkey did not make it an inadequate forum).

---

4. Aguilar Herrera also describes this process in his affidavit but states that the judge has complete discretion regarding which questions to ask.

5. Note that procedural differences generally do not render a forum inadequate. *See, e.g.,*

## 2. Private and Public Interest Factors

■ Once a Defendant establishes the existence of an adequate alternative forum, the district court must consider the private interests of the litigants and factors of public interest in determining the relative convenience of the plaintiff's choice of forum as opposed to the alternative forum. *See Dowling,* 727 F.2d at 612. If the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper. "[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft,* 454 U.S. at 255, 102 S.Ct. 252. The presumption applies with less force, however, when the plaintiff is not a United States citizen. *See id.* "While it is reasonable to assume that a plaintiff's home forum will be convenient, when plaintiff is an alien it is less reasonable to assume that his or her choice of forum will be convenient." *Dowling v. Richardson–Merrell, Inc.,* 727 F.2d 608, 614 (6th Cir. 1984).

■ In the present case, a German national filed an Amended Complaint with this Court alleging that Defendants engaged in tortious interference with advantageous business relations, abuse of process, malicious prosecution, violation of the "law of nations" and fraud through their use of the Honduran legal system in a commercial dispute that took place in Honduras eight years ago. In addition, the same allegations and core facts in the Plaintiff's Amended Complaint are the subject of a Honduran civil case and a Honduran criminal action both initiated by Plaintiff. Under these circumstances, the great deference due a plaintiff's choice of his home forum is inapplicable.

### a) Private interest factors

■ The important private interest of the litigants that the court must consider include:

The relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Piper Aircraft,* 454 U.S. at 241, 102 S.Ct. 252.

In this case, the private interest factors weigh heavily in favor of dismissal. The Plaintiff is a German citizen who resides in Florida. All of the events underlying the action took place in Honduras. The alleged wrongdoing by Defendants implicates their possible abuse of the Honduran legal system, and all of the relevant legal documents and court files are located in Honduras. In addition, while some of the parties are domiciled in the United States, most of the fact witnesses are located in Honduras.[6]

Plaintiff argues that almost all of the potential fact witnesses will be called by the Plaintiff, and many of them will be willing to travel and testify. Plaintiff contends that it is inappropriate for the Defendants or the Court to protect the plaintiff from inconveniences he has apparently embraced. *See Ludgate Ins. Co. Ltd. v.*

**6.** They include: (i) Leonel Medrano Irias, who according to Plaintiff's allegations, is one of the principal wrongdoers, (ii) Reynaldo Rivera Cruz, the hotel employee who allegedly warned Plaintiff that the Defendants' agent were "seeking him in a menacing manner," (iii) Maria Demaris Diaz De Machuca, the friend who allegedly gave Plaintiff shelter after he escaped from the hotel, (iv) Marcos Munoz, the hotel manager, (v) Norman Oswaldo Ramos Torres and Ricardo Efrain Romero, the two "citizens of Honduras" who allegedly overheard the Defendants' agents planning to harm Plaintiff, (vi) Judge Mario Matias Galindo, the Honduran judge who signed the arrest warrant, and (vii) Salusfio Aguiar Martinez, the Honduran notary who notarized the arrest warrant.

*Becker,* 906 F.Supp. 1233, 1238 (N.D.Ill. 1995). However, the test under a forum non conveniens analysis is not whether the plaintiff can produce critical witnesses but whether the Court has compulsory process over them. Defendants point out that the facts underlying the action are in dispute, especially the facts that relate to the events that occurred at the Plaintiff's hotel. As such, eyewitness testimony will be critical and the credibility of such witnesses will be at issue. Some, if not all of these witnesses will be beyond the reach of this Court's compulsory process. In addition, because Defendants argue that all their actions were in accordance with Honduran law and the orders of Honduran judicial officials, testimony of sitting members of the Honduran judiciary may be necessary. This Court does not have the power to compel the testimony of such individuals.

Furthermore, even if witnesses in this action are willing to travel to the United States, the cost of bringing them to this forum and the costs of translating their testimony is a factor that militates in favor of Honduras as a more appropriate forum for this litigation. Any documentary proof would also need to be translated into English.

### b) Public interest factors

■ The public factors this Court must weigh in a forum non conveniens analysis include the administrative difficulties stemming from court congestion; the local interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of laws or the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *See Piper Aircraft,* 454 U.S. at 241 n. 6, 102 S.Ct. 252 Two of these factors, the difficulty of applying Honduran law and the strong Honduran interest in this litigation, weigh heavily in favor of Honduras as a more convenient forum. First, both parties submit that Honduran law will apply to this action. Therefore, this Court would need to apply the law of a foreign nation with a different system of law and a different language to the Plaintiff's claims. Both parties, as well as the Court, would need to obtain experts on Honduran law to assist with this process.

The Plaintiff contends that the difficulty of applying Honduran law in this action is not an insurmountable obstacle warranting dismissal and that the Southern District of Ohio has a strong interest in this case. Plaintiff cites the recent publicity regarding Defendants in the *Cincinnati Enquirer* to support his argument that local interests weigh in favor of this Court retaining jurisdiction. However, given Plaintiff's allegations of judicial corruption and abuse of process, Honduras has a much stronger interest in the matter. As one district court noted, if the Honduran courts "do not have a surpassingly greater interest in their own integrity than do the American courts, then the public interest factor is meaningless." *Eastman Kodak,* 978 F.Supp. at 1084. Finally, since Plaintiff has initiated a suit in Honduras on the same underlying facts, judicial efficiency weighs in favor of dismissal. The Court therefore finds that both the public and private interest factors weigh in Defendants' favor.

## III. CONCLUSION

Defendant has presented sufficient evidence to demonstrate that Honduras is an adequate, alternative forum and that the convenience of the parties and the interests of justice favor litigation in the Honduran forum. Consequently, the Court hereby **GRANTS** Defendants' motion to dismiss on the grounds of forum non conveniens.

**IT IS SO ORDERED.**