**Mohammed A. KAMEL, d/b/a Al Muraa Establishment, Plaintiff–Appellant,**

v.

**HILL–ROM COMPANY, INC. and Elias Ephrem Abou–Chedid, Defendants–Appellees.**

**No. 96–1610.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 1, 1996.

Decided March 14, 1997.

---

Alan S. Brown (argued), Julia B. Gelinas, Locke, Reynolds, Boyd & Weisell, Indianapolis, IN, for Plaintiff–Appellant.

Donald E. Knebel, Lynn C. Tyler (argued), Barnes & Thornburg, Indianapolis, IN, for Hill–Rom Co., Inc.

John J. Morse, Michael A. Wukmer (argued), Ice, Miller, Donadio & Ryan, Indianapolis, IN, for Elias E. Abou–Chedid.

Before CUMMINGS, BAUER, and EASTERBROOK, Circuit Judges.

BAUER, Circuit Judge.

Mohammed A. Kamel initiated an action in Indiana District Court against Hill–Rom Company for breach of contract, breach of fiduciary duty, unjust enrichment, misappropriation of confidential information, actual and constructive fraud, and tortious interference with business relationships. In response, Hill–Rom filed a Motion to Dismiss on the basis of *forum non conveniens*, which the district court granted. Kamel now appeals that decision.

Kamel is a citizen of the Kingdom of Saudi Arabia doing business as Al Muraa Establishment. Al Muraa is a sole proprietorship which markets and distributes medical equipment in Saudi Arabia. Hill–Rom is an Indiana corporation which manufactures and sells hospital equipment, primarily hospital beds. In 1985, Kamel and Hill–Rom agreed that Al Muraa would promote, market, and sell Hill–Rom products in Saudi Arabia. In turn, Hill–Rom would supply its products exclusively to Al Muraa for distribution and sale in Saudi Arabia, meet the warranty and maintenance obligations required for Hill–Rom products sold in Saudi Arabia, and give Al Muraa support for after-sales service and installation of Hill–Rom products. In 1986, the parties furthered their agreement by entering into a joint venture. That same year, Al Muraa agreed to hire Elias Ephrem Abou–Chedid, Hill–Rom's Middle East Area Manager, to market and sell Hill–Rom's products in Saudi Arabia.

In 1991, Hill–Rom informed Al Muraa that Chedid had accepted work with a competing distributor, Saudi Trading Services International Co., Ltd. ("STS"). According to Ka-

mel's complaint, Hill–Rom and Chedid induced Al Muraa into releasing Chedid from his employment obligations by assuring Al Muraa that Chedid would not be marketing and selling Hill–Rom products for STS. After his release and contrary to Hill–Rom and Chedid's assurances, Chedid's work for STS largely consisted of marketing and selling hospital equipment in general and Hill–Rom's products in particular. In October 1992, Hill–Rom notified Al Muraa that it was appointing STS as an additional distributor for its products in Saudi Arabia. Al Muraa objected to this arrangement because Chedid was working for STS, and Al Muraa believed that Chedid was linked with projects for STS which had originally been developed during Al Muraa and Hill–Rom's joint venture. Kamel also alleges that Hill–Rom diverted sales accounts to STS which had originated from the joint venture.

Finally, Kamel claims that Hill–Rom wrongfully terminated the parties' agreement on April 1, 1993, when Hill–Rom advised Al Muraa that it would no longer supply its products. By this point, Al Muraa had originated and developed roughly $30 million in outstanding quotations for Hill–Rom products and had negotiated numerous ongoing contracts, all on behalf of the joint venture. Hill–Rom knew of and approved these quotations and contracts.

Kamel initiated this action in February 1994 and amended his complaint in March 1995, alleging breach of contract and breach of fiduciary duty among his eight counts against Hill–Rom and Chedid. Seventeen months after Kamel filed his original complaint, Hill–Rom sought dismissal of Kamel's action pursuant to the doctrine of *forum non conveniens*, contending that Saudi Arabia would be the best arena for this action. Concerned with Hill–Rom's lackadaisical pursuit of its *forum non conveniens* motion, the district court required Hill–Rom to present "a particularly convincing case to ensure that Hill–Rom is not merely seeking to delay the proceedings or otherwise illegitimately frustrate [Kamel]." Despite the heightened burden it imposed on Hill–Rom, the district court granted Hill–Rom's motion, and we affirm.

## Analysis

### A. *Forum Non Conveniens and Standard of Review.*

■ The principle of *forum non conveniens* comes down to this: a trial court may dismiss a suit over which it would normally have jurisdiction if it best serves the convenience of the parties and the ends of justice. See *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 839, 842–43, 91 L.Ed. 1055 (1947); *Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067 (1947). When an alternative forum has jurisdiction to hear a case, and when a trial in the chosen forum would result in vexation and oppression to the defendant which would far outweigh the plaintiff's convenience or when the chosen forum would generate administrative and legal entanglements for the trial court, the court may dismiss the case. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241, 102 S.Ct. 252, 258, 70 L.Ed.2d 419 (1981); *see also Macedo v. Boeing Co.,* 693 F.2d 683, 689 (7th Cir.1982).

■ A *forum non conveniens* determination is consigned to the trial court's sound discretion. *Piper,* 454 U.S. at 254, 102 S.Ct. at 265. Where a district court has contemplated all relevant public and private interest factors and where its balancing of these factors is reasonable, its *forum non conveniens* determination warrants substantial deference. *Id.; Wilson v. Humphreys (Cayman) Ltd.,* 916 F.2d 1239, 1245 (7th Cir.1990), *cert. denied,* 499 U.S. 947, 111 S.Ct. 1415, 113 L.Ed.2d 468 (1991). We review this determination only for abuse of discretion. *Id.; see also Wilson,* 916 F.2d at 1245.

### B. *Whether an Adequate Alternative Forum Exists.*

■ As a practical matter, it makes little sense to broach the subject of *forum non conveniens* unless an adequate alternative forum is available to hear the case. Therefore, the first step in any *forum non conveniens* inquiry is to decide whether such a place exists. *Piper,* 454 U.S. at 254, 102 S.Ct. at 265. This is a two-part inquiry: availability and adequacy. *In re Air Crash Disaster Near New Orleans, La.,* 821 F.2d

1147, 1165 (5th Cir.1987) (en banc), *partially vacated on other grounds*, 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989). An alternative forum is available if all parties are amenable to process and are within the forum's jurisdiction. *Id.* An alternative forum is adequate when the parties will not be deprived of all remedies or treated unfairly. *Piper*, 454 U.S. at 255, 102 S.Ct. at 265–66.

■ Kamel believes that the district court wrongly found that Saudi Arabia is an available alternative forum. He fears that Hill–Rom will not be amenable to process in Saudi Arabia and that a Saudi judgment will not be enforceable because the district court failed to attach such explicit conditions to its *forum non conveniens* dismissal. We disagree. As the district court indicated and we note, Hill–Rom has expressly consented to Saudi Arabia's jurisdiction. Hill–Rom also submitted the affidavit of Vernon Cassin, an expert in Saudi law. Cassin's affidavit indicated that Saudi law recognizes consents to jurisdiction, and that even without Hill–Rom's consent, Saudi law would render Hill–Rom amenable to Saudi jurisdiction.

■ Kamel also stresses that Saudi Arabia's legal remedies are so inadequate that it is not an adequate alternative forum. He maintains that the district court ignored his expert, Dr. Mujahid M. Al–Sawwaf, who stated that, of the claims brought by Kamel, Saudi Arabia only recognizes a breach of contract action. However, the district court, having concluded that Al–Sawwaf had overstated the lack of redress in Saudi courts, was more persuaded by Cassin's opinion. Cassin stated that Saudi Arabia recognizes claims for breach of contract and other claims similar to those which Kamel has alleged. "A court may dismiss on *forum non conveniens* grounds even though the foreign forum does not provide the same range of remedies as are available in the home forum. However, the alternative forum must provide some potential avenue for redress." *Ceramic Corp. of America v. Inka Maritime Corp.*, 1 F.3d 947, 949 (9th Cir.1993). Kamel *does* have a potential avenue for redress in Saudi Arabia in his breach of contract action, as even Kamel's own expert agrees. The district court simply had more faith in Hill–

Rom's expert than in Kamel's. We find no abuse of discretion in the district court's threshold determination that Saudi Arabia is an adequate alternative forum.

### C. *Whether the Trial Court Correctly Balanced the Interests Involved.*

■ Provided an adequate alternative forum exists, the district court must then balance the private and public interest factors that emerge in a given case. *Gilbert*, 330 U.S. at 508, 67 S.Ct. at 843; *Koster*, 330 U.S. at 524, 67 S.Ct. at 831–32. Ordinarily, the trial court should not supplant the plaintiff's choice of forum. *Piper*, 454 U.S. at 241, 102 S.Ct. at 258; *Wilson*, 916 F.2d at 1245. When the plaintiff chooses his *home* forum, it is reasonable to assume that this choice is convenient. *Piper*, 454 U.S. at 256, 102 S.Ct. at 266. However, because the primary objective of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice of forum deserves less deference. *Id.; Wilson*, 916 F.2d at 1246. In this case, the district court was aware that it should pay less deference to Kamel's forum choice because he (and Al Muraá) are Saudi Arabian citizens.

The factors pertaining to the private interests of the litigants include the relative ease of access to sources of proof; availability of compulsory process for the attendance of unwilling witnesses; the cost of obtaining the attendance of willing witnesses; the possibility of viewing the premises, if necessary; and all other practical problems that make trial of a case easy, efficient and economical. *Gilbert*, 330 U.S. at 508, 67 S.Ct. at 843. The public factors include the administrative difficulties stemming from court congestion; the local interest in having localized disputes decided at home; the interest in having trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Piper*, 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6.

Kamel contends that the district court erred when it determined that the private interests relating to documentary proof and the availability of witnesses favored trial in Saudi Arabia. As for the public interests, Kamel believes that the district court erroneously concluded that the interests of Indiana residents in this case were marginal. Kamel also finds fault with the district court's finding that choice-of-law issues favored trial in Saudi Arabia. Finally, Kamel maintains that the district court erred because it did not weigh the disadvantages and advantages of both forums, but only set its sights on the inconveniences of Indiana.

The district court adequately balanced the private factors. As to documentary proof, the court found that although the parties had already exchanged numerous documents, dozens of contracts which form the basis of their dispute and which are written in Arabic remain in Saudi Arabia. The district court further determined that, aside from a few of Hill–Rom's principals, all other pertinent and potential witnesses are located in Saudi Arabia. Kamel, however, maintains that every one of the witnesses specifically named by Hill–Rom is available to testify in person in Indiana. Hill–Rom's list consists of seven people, four of whom are Hill–Rom officers. Of the four, one of them would have to travel to the United States to testify. The next two witnesses, Kamel and Al Muraá's general manager, Burkhard Piotrowski, are available because of Kamel's willingness to incur the cost of a $3,500 round-trip ticket from Riyadh to Indianapolis. Finally, Kamel argues that Chedid is within the district court's jurisdiction, but today we reach a contrary conclusion, as discussed below. Adding to the mix is the fact that a considerable number of Hill–Rom's *potential* witnesses, including Al Muraá's customers, reside in Saudi Arabia. We therefore find that the district court's inference of inconvenience was permissible.

The district court adequately balanced the public factors. The district court permissibly concluded that the interests of Saudi Arabians outweigh the interests of Indiana residents. Kamel stresses that the defendant's home forum always has an interest in providing a forum for redress for injuries caused by one of its citizens. *Reid–Walen v. Hansen,* 933 F.2d 1390, 1400 (8th Cir.1991). Indiana residents have an interest in this case because Hill–Rom is an Indiana corporation, but we find the present case to be distinguishable from *Reid–Walen* and cases with similar holdings. In *Reid–Walen,* a Minnesota citizen was injured when an errant Jamaican citizen struck her with his motorboat while she was swimming near the beach area of a Jamaican resort owned by a Missouri couple. The plaintiff originally brought her claim against the defendant couple in the Southern District of Florida, but the case was subsequently transferred to a Missouri district court. There the defendants succeeded on their *forum non conveniens* motion when district court ruled that Jamaica was the proper forum. The Eighth Circuit reversed, reasoning that proper weight should have been given to the fact that *both* the plaintiff and the defendants were United States citizens. *Id.* at 1394. The court emphasized that the plaintiff was not engaging in extensive business relations abroad. Rather, she was a United States citizen enjoying a personal vacation in a resort spot which was located near the United States and owned by United States citizens. *Id.* at 1395. This factual scenario bears little resemblance to the case before us.

The court in *Reid–Walen* also noted that there are certain situations where a court will give less consideration to the maxim that the defendant's home forum always has an interest in providing a forum for redress for injuries caused by one of its citizens. The court observed that, given the ever-expanding realm of international commerce, many courts have somewhat discounted a plaintiff's United States citizenship when that plaintiff is an American corporation with extensive foreign business and it brings an action for an injury occurring in a foreign country. *Id.* at 1395. The facts in Kamel's suit suggest a still stronger case for giving less weight to the above maxim. Here, we do not even have an American plaintiff. Instead, we have a foreign plaintiff who was injured in a foreign land filing suit against an American defendant with extensive foreign dealings. The district court thus made a permissible

inference that Indiana residents have a mere passing interest in this case.

Concerning Kamel's worries over choice of law, we find no abuse of discretion in the district court's applying Indiana choice-of-law rules. For Kamel's tort claims, the district court stated that Indiana uses the law of the place where the injury occurred so long as that place bears a significant connection to the case. *See Hubbard Mfg. Co., Inc. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind.1987); *Giffin v. Summerlin*, 78 F.3d 1227, 1230 n. 3 (7th Cir.1996). The place of injury was clearly Saudi Arabia, where Kamel's business would suffer as a result of Hill–Rom's conduct. The condition of "significant connection" was easily satisfied, as Saudi Arabia is the residence of Kamel, Al Muraá and Chedid and the locale where the parties conducted their ongoing business relationship. For Kamel's claims that sound in contract law, the district court employed Indiana's "most significant relationship" test. *See Eby v. York–Division, Borg–Warner*, 455 N.E.2d 623, 626 (Ind.Ct.App.1983); *Secon Serv. Sys., Inc. v. St. Joseph Bank & Trust Co.*, 855 F.2d 406, 413 (7th Cir.1988). This test likewise pointed to Saudi Arabia, as that is where the contract was negotiated and performed and where its subject matter can be found. Under Indiana choice-of-law rules, the district court would have to apply Saudi Arabian law. The district court was therefore justifiably concerned with presiding over a trial in which it would have to delve into the tenets of an unfamiliar legal system.

Overall, contrary to what Kamel suggests, the district court did not disregard the advantages of Indiana. The district court considered that the parties had already exchanged a number of documents in an Indiana District Court, recognized that Hill–Rom's principals are all Indiana residents, and acknowledged that Indiana has an interest in this suit because Hill–Rom is an Indiana corporation. However, the district court simply concluded that the *Gilbert* factors balanced in favor of Saudi Arabia. Accordingly, we find no abuse of discretion in the district court's balancing act.

### D. *What About Chedid?*

Finally, we consider whether we should dismiss Chedid because his presence disrupts subject matter jurisdiction. Title 28 U.S.C. § 1332 confers diversity jurisdiction in the district courts when a citizen of one State sues both aliens and citizens of a State different from the plaintiff's, § 1332(a)(3), and when a citizen of a State sues aliens only, § 1332(a)(2). *See Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 828, 109 S.Ct. 2218, 2220–21, 104 L.Ed.2d 893 (1989). However, for diversity purposes, an expatriate is deemed neither an alien nor a citizen of any State. *See id.* When a plaintiff sues multiple defendants in a diversity action, complete diversity must be present. That is, the plaintiff must satisfy the diversity requirements for each defendant or else encounter dismissal. *Id.* at 829, 109 S.Ct. at 2221; *Strawbridge v. Curtiss*, 3 Cranch 267, 7 U.S. 267, 2 L.Ed. 435 (1806).

In this case, Chedid is plainly an American expatriate who calls Saudi Arabia his domicile.[1] Chedid's "stateless" status upsets complete diversity under § 1332(a)(3), and his United States citizenship tarnishes complete diversity under § 1332(a)(2). The district court therefore lacked jurisdiction to rule on Hill–Rom's *forum non conveniens* motion because Chedid was a party to this action. An appellate court, however, has the power to dismiss a dispensable party whose presence sullies statutory diversity jurisdiction. *Newman–Green*, 490 U.S. at 826, 109 S.Ct. at 2218. Today, we exercise that power and dismiss Chedid.

An appellate court should carefully consider whether the dismissal of a non-diverse party will prejudice any of the parties in the

---

1. Kamel and Hill–Rom maintain that because Kamel's amended complaint stated that Chedid is an Ohio citizen and because Chedid never expressly denied this allegation, it should be deemed true. *See National Acceptance Co. of America v. Bathalter*, 705 F.2d 924, 926; Fed. R.Civ.P. 8(d). However, in an affidavit to support his Motion to Dismiss, Chedid, while not explicitly denying Kamel's allegation that he is domiciled in Ohio, stated that he is a United States citizen who has lived in Saudi Arabia for the last eight years. Thus, Chedid is not a citizen of Ohio, but an American expatriate.

806

litigation. *Id.* at 838, 109 S.Ct. at 2225–26. In *Newman–Green,* instead of dismissing the plaintiff's case, this Court granted the plaintiff's motion to amend its complaint to drop the non-diverse party, thereby creating complete diversity under § 1332(a)(2). The panel then found the non-diverse party to be dispensable and went on to decide the merits of the case, leaving damages and some minor issues to the district court on remand. *Id.* at 829, 109 S.Ct. at 2221. In this case, we need not fret about dismissing Chedid because this suit will not continue after his dismissal. That is, because we are dismissing Chedid only to attain subject matter jurisdiction to affirm a *forum non conveniens* dismissal, neither we nor the district court on remand would have to decide the merits of Kamel's case. By our affirming the dismissal of Kamel's case on the basis of *forum non conveniens,* Kamel necessarily will have to pursue his claims against both Hill–Rom and Chedid in a Saudi Arabian tribunal anyway. Ergo, Chedid's dismissal will not prejudice any of the parties.

### Conclusion

For the foregoing reasons, we AFFIRM the district court's granting Hill–Rom's Motion to Dismiss on the basis of *forum non conveniens.*