**In re BRIDGESTONE/FIRESTONE, INC., ATX, ATX II AND WILDERNESS TIRES PRODUCTS LIABILITY LITIGATION.**

This Document Relates To: IP 00–5083–C–B/S; IP 00–5089–C–B/S; IP 00–5090–C–B/S; IP 00–5091–C–B/S; IP 00–5098–C–B/S; IP 00–5099–C–B/S; IP 00–5011–C–B/S; IP 00–5013–C–B/S; IP 00–5065–C–B/S; IP 00–5078–C–B/S; IP

00–5079–C–B/S; IP 00–5080–C–B/S; IP 00–5081–C–B/S; IP 00–5082–C–B/S; IP 00–5084–C–B/S; IP 00–5085–C–B/S; IP 00–5086–C–B/S; IP 00–5087–C–B/S; IP 00–5088–C–B/S; IP 00–5092–C–B/S; IP 00–5093–C–B/S; IP 00–5094–C–B/S; IP 00–5095–C–B/S; IP 00–5096–C–B/S; IP 00–5097–C–B/S; IP 00–5100–C–B/S; IP 00–5101–C–B/S; IP 00–5102–C–B/S; IP 00–5103–C–B/S; IP 00–5104–C–B/S; IP 00–5105–C–B/S; IP 00–5106–C–B/S; IP 00–5107–C–B/S; IP 00–5108–C–B/S; IP 00–5109–C–B/S; IP 00–5110–C–B/S; IP 00–5111–C–B/S; IP 00–5112–C–B/S; IP 00–5113–C–B/S; IP 00–5114–C–B/S; IP 00–5115–C–B/S; IP 00–5116–C–B/S; IP 00–5117–C–B/S; IP 00–5118–C–B/S; IP 00–5119–C–B/S; IP 00–5120–C–B/S.

No. IP 00–9373–C–B/S.
MDL No. 1373.

United States District Court,
S.D. of Indiana,
Indianapolis Division.

Feb. 6, 2001.

Don Barrett, Barrett Law Office Pa, Lexington, MS, Victor Manuel Diaz Jr., Podhurst Orseck Josefsberg Eaton, Miami,

FL, Mike Eidson, Colson Hicks Eidson, Coral Gables, FL, Irwin B. Levin, Cohen & Malad, Indianapolis, IN, William E. Winingham, Wilson Kehoe & Winingham, Indianapolis, IN, for plaintiff.

John H. Beisner, O'Melveny & Myers LLP, Washington, DC, Daniel P. Byron, McHale Cook & Welch PC, Indianapolis, IN, Glen R. Goldsmith, Glen R. Goldsmith & Associates Pa, Miami, FL, Mark Herrmann, Jones Day Reavis & Pogue, Cleveland, OH, Thomas S. Kilbane, Squire Sanders & Dempsey LLP, Cleveland, OH, Louis A. Lehr Jr., Arnstein & Lehr, Chicago, IL, Mark Merkle,Krieg Devault Alexander & Capehart, Indianapolis, IN, Randall Riggs, Locke Reynolds LLP, Indianapolis, IN, Michael P. Rudd, Hightower and Rudd Pa, Miami, FL, Colin P. Smith, Holland & Knight LLP, Chicago, IL, Thomas G. Stayton, Baker & Daniels, Indianapolis, IN, for defendants.

### ORDER GRANTING PLAINTIFFS' MOTION FOR DISCOVERY ON FORUM NON CONVENIENS

BARKER, District Judge.

On December 21, 2000, Defendant Ford Motor Company ("Ford") filed a "Motion to Dismiss on Forum Non Conveniens Grounds (Colombian Cases)" and a "Motion to Dismiss on Forum Non Conveniens Grounds (Venezuelan Cases)." Defendant Bridgestone/Firestone, Inc. ("Firestone") also seeks dismissal of these cases on the same grounds. Firestone filed its motion on January 9, 2001. Plaintiffs conferred with Defendants, seeking discovery and an extended briefing schedule on the issues. Unfortunately, the parties were unable to reach agreement. Plaintiffs then filed a "Motion to Set Discovery and Briefing Schedule on Defendants' Motions to Dismiss Venezuelan and Colombian Accident Lawsuits on Forum Non Conveniens Grounds" ("Discovery Motion"). For the reasons set forth below, the Court *GRANTS* Plaintiffs' Discovery Motion. Parties shall complete discovery on forum non conveniens issues no later than sixty (60) days from the issuance of this Order. No later than thirty (30) days after the completion of discovery, Plaintiffs shall file their memorandum of law in response to Defendants' forum non conveniens motions. Defendants shall have another fifteen (15) days thereafter to file their reply.

### *Discovery on Forum Non Conveniens*

When ruling on a motion to dismiss for forum non conveniens, the Court conducts a fact-based inquiry. The Supreme Court has noted that "the district court is accorded substantial flexibility in evaluating a forum non conveniens motion, and *each case turns on* its facts." *Van Cauwenberghe v. Biard,* 486 U.S. 517, 529, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988) (emphasis added) (internal citations omitted). In the Seventh Circuit, this "flexibility" is reined in by the requirement that the district court must "contemplate[ ] all relevant public and private interest factors" and balance these factors in a "reasonable" manner. *Kamel v. Hill–Rom Company, Inc.,* 108 F.3d 799, 802 (7th Cir.1997). The court must determine whether there is an adequate alternative forum available to adjudicate the case and consider no less than a total of ten private and public interest factors. *Id.* at 802–03. Such factors include "the relative ease of access to sources of proof, . . . the cost of obtaining the attendance of willing witnesses, . . . and . . . the local interest in having localized disputes decided at home." *Id.* at 803. Considering and weighing these factors requires the court to "scrutinize the substance of the dispute between the parties to evaluate what proof is required and [to] determine whether the pieces of evidence cited by the parties are critical, or even relevant to the plaintiff's cause of action and to any potential defenses to the action." *Van Cauwenberghe,* 486 U.S. at 528, 108 S.Ct. 1945. This rather daunting task is hardly one to be undertaken without adequate information.

Therefore, it behooves courts to permit discovery on facts relevant to fo-

rum non conveniens motions. In *Alfadda v. Fenn,* 1994 WL 714254, at *1 (S.D.N.Y. Dec.22, 1994), the court ordered discovery after concluding that resolution of a motion to dismiss on the basis of forum non conveniens or lack of in personam jurisdiction would likely depend on the results of this discovery, which one of the defendants had not yet conducted.[1] Indeed, development of the relevant facts is vital to a decision strong enough to withstand appeal. In *C.A. La Seguridad v. Transytur Line,* 707 F.2d 1304, 1308–10 (11th Cir.1983), the circuit court vacated and remanded so that the district court could specify facts sufficient to support its forum non conveniens dismissal. *See also Lacey v. Cessna Aircraft Co.,* 862 F.2d 38, 44–45 (3d Cir.1988) (remanding forum non conveniens dismissal because defendants did not submit sufficient information to allow district court to properly examine motion).

While some discovery is necessary to the consideration of Defendants' motions, discovery should not proceed uncontrolled. Certainly, repetitive discovery on forum non conveniens should be avoided. *Fitzgerald v. Texaco, Inc.,* 521 F.2d 448, 451 n. 3 (2d Cir.1975) (denying deposition discovery when forum non conveniens topics already covered in interrogatories). There is little risk of repetitive discovery here. Prior to consolidation in this MDL, Plaintiffs were unable to initiate discovery in the transferor courts because Defendants had applied for stays of discovery, pending decision by the Judicial Panel on Multidistrict Litigation. Discovery Motion at 7.

Also, at the start of MDL proceedings, this Court stayed all discovery absent exigent circumstances. Order Staying Discovery (Effective Immediately), October 26, 2000.

■ Another limit on the extent of discovery is that forum non conveniens motions "do[ ] not call for a detailed development of the entire case." *Fitzgerald,* 521 F.2d at 451 n. 3. As noted in *Van Cauwenberghe,* 486 U.S. at 528, 108 S.Ct. 1945, discovery should establish what pieces of evidence are important to the cause of action and to potential defenses. Then, discovery must focus on the "location of [these] important sources of proof." *Fitzgerald,* 521 F.2d at 451 n. 3. The factors that *Kamel* requires courts to consider, like access to sources of proof and the cost of obtaining the attendance of willing witnesses, suggest the parameters for the range of allowable discovery in connection with forum non conveniens motions.

Defendants oppose any discovery whatsoever, even the circumscribed discovery appropriate for forum non conveniens motions discussed above. They object on the grounds that it will only "confirm what everyone already knows"—that documents relating to Plaintiffs' theory of liability are located in the United States and that case-specific or damage witnesses are located in Venezuela and Colombia. Defendants' Opposition at 3, 7. There appears to be little basis for Defendants' concern. As noted above, Plaintiffs have had little opportunity to undertake discovery in these cases so it is unlikely that they are simply seeking

1. Defendants attempt to distinguish this case from *Alfadda* by noting that the *Alfadda* court's order was based on "the circumstances of the present case." Defendants' Response to Plaintiffs' Notice of Supplemental Authority in Support of Motion to Set Discovery and Briefing Schedule at 1(quoting *Alfadda,* 1994 WL 714254, at *1). The full text of *Alfadda* makes clear that "the circumstances of the present case" refers to a situation "where plaintiffs have shown in their pleadings an arguable basis for concluding that … a forum non conveniens dismissal may not be appropriate." *Alfadda,* at *1. Even Defendants agree that some of the relevant evidence

is located in the United States, which the Court finds establishes at least "an arguable basis" for denying a forum non conveniens dismissal. Defendants Ford Motor Company's and Bridgestone/Firestone, Inc.'s Joint Opposition to Plaintiffs' Motion to Set Discovery and Briefing Schedule ("Defendants' Opposition") at 3.

Defendants also contend that the *Alfadda* court's statement permitting discovery on forum non conveniens facts is dicta because the opinion goes on to discuss only specific discovery related to the in personam jurisdiction issue raised in *Alfadda.* The Court does not read the *Alfadda* opinion so narrowly.

to corroborate what they already know from other discovery sources.

In addition, Defendant Ford makes a number of sweeping assertions in support of its forum non conveniens motion in the Venezuelan cases, including that "[t]he vehicles at issue in the cases were likely manufactured in Venezuela by a Venezuelan company and were marketed and sold in Venezuela by a Venezuelan business" and "[t]he vast majority of the Firestone tires used as original equipment on Ford Explorers sold in Venezuela were manufactured in Venezuela." Memorandum of Points and Authorities in Support of Defendant Ford Motor Company's Motion to Dismiss on Forum Non Conveniens Grounds (Venezuelan Cases) ("Ford's Memo.") at 1 (emphasis omitted). Ford has not submitted any evidence, even affidavits, supporting its claims, which raises the question of what is really "known" about the facts pertinent to Defendants' motions. In fact, Plaintiffs have tendered some evidence tending to *refute* their claims. As an example, a document entitled "Firestone Tire Test Preparation," dated January 7, 2000, refers to a service incentive program for Explorers sold in Venezuela with both Venezuela and *U.S.* made Firestone tires. Discovery Motion, Exhibit B. This document suggests that enough of the tires were made in the United States to warrant the inclusion of U.S.—made tires in the service incentive program discussed therein, further casting doubt on Ford's unsupported claim that the "vast majority" of tires at issue in the Venezuelan cases were made in Venezuela.

*Deposing Foreign Law Experts*

In support of the motions to dismiss, Defendants have included affidavits from a number of foreign law experts. *See, e.g.,* Declaration of Pedro A. Rengel in Support of Defendant Ford Motor Company's Motion to Dismiss on Forum Non Conveniens Grounds ("Rengel Declara-

tion"), attached as Exhibit B to Memorandum of Points and Authorities in Support of Defendant Ford Motor Company's Motion to Dismiss on Forum Non Conveniens Grounds (Venezuelan Cases). Plaintiffs seek to depose these foreign law experts and to conduct other expert discovery. Discovery Motion at 3, 15. Defendants object, arguing that the experts' affidavits address only questions of law, which are inappropriate subjects of discovery. Defendant's Objection at 10.

The Court sees no reason to prohibit Plaintiffs from deposing Defendants' experts. Much of the experts' affidavits do attest to legal issues. For instance, Rengel states:

> Civil practice in Venezuelan courts is primarily governed by the Venezuelan Code of Civil Procedure, which establishes the rules applicable to the filing of complaints, attachments and other preliminary measures, service of summons, answers to complaints, appeal and execution of judgments, and other aspects of civil procedure.

Rengel Declaration, ¶ 7. However, the expert declarants also make sweeping conclusions based on the statements of law they set forth. In fact, the above quote from Rengel concludes with the assertion that "[i]n all these respects, Venezuelan law comports with recognized standards of due process." *Id.* Discovery on the basis for this conclusion and on Rengel's qualifications to reach such a conclusion is certainly appropriate here, as it is generally for the testimony of experts.[2] Should Plaintiffs pose questions beyond the scope of permitted discovery, Defendants can raise their objections to the Court at that time.

It is so ORDERED this 6th day of February, 2001.

---

2. In *Haarhuis v. Kunnan Enterprises, Ltd.*, 223 B.R. 252, 257 (D.D.C.1998), an expert witness, who had made conclusory statements about foreign law similar to those of declarants here, was deposed by the opposing party.