**O.C. PENGE, Plaintiff,**

v.

**HILLENBRAND INDUSTRIES, INC., Batesville Casket, Inc., The Hillenbrand Industries, an assumed name for Batesville Services, Inc., Defendant.**

No. IP02–0605–C B/S.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Oct. 31, 2002.

930

W. Scott Montross, Townsend & Montross, Indianapolis, IN, for Plaintiff.

Tammy J. Meyer, Lewis & Wagner, Indianapolis, IN, for Defendant.

## ENTRY ON PENDING MOTIONS

BARKER, District Judge.

### I. *Introduction.*

This entry resolves two pending motions: defendant's motion to dismiss on the ground of *forum non conveniens ("FNC");* and defendant's motion to dismiss Counts II, IV, V, VI, and VII, or, in the alternative for a more definite statement. For the reasons that follow, we DENY both of defendant's motions.

### II. *Statement of Facts.*

We present the following statement of facts based solely on Mr. Penge's complaint for the purpose of situating Hilenbrand's [1] motions in their context. Mr. Penge is a citizen of Buckinghamshire, England. Hillenbrand is a corporation that does business world-wide; its principal place of business is in Batesville, Indiana.[2]

In November 1998, Mr. Penge's wife of thirty-five years died. Mr. Penge bought

---

1. We refer to "Hillenbrand" in the singular for the sake of convenience, notwithstanding the presence of three named defendants. Defendants' answer to the complaint, its corporate disclosure statement, and its briefs, indicate that Batesville Casket Company is a subsidiary of Hillenbrand Industries, Inc., and that Batesville designed and manufactured the model casket at issue in this lawsuit, the "Millennium." Batesville manufactured, marketed, and sold caskets, including the Millennium, to licensed funeral directors. Batesville does business world wide. See Answer, ¶¶ 2, 5; Brief in Support of Motion to Dismiss, Forum Non Conveniens, p. 6; Corp. and Bus. Entity Disclosure Statement.

2. It is clear from the pleadings that the parties are diverse. However, Hillenbrand de-

a casket, known as the "Millennium," which was designed and manufactured by Batesville Casket Company. On November 11, 1998, Ms. Penge's remains were interred in a burial vault on Mr. Penge's property in Buckinghamshire. On April 24, 2000, Mr. Penge discovered that the casket leaked blood and other bodily fluids.

Mr. Penge claims that the casket was defective and now sues the defendants, according to numbered counts, for: (I) negligence; (II) negligent infliction of emotional distress; (III) strict liability; (IV) breach of warranty; (V) breach of contract; (VI) fraud and misrepresentation; and (VII) intentional infliction of emotional distress.

Hillenbrand argues that, "[b]oiled down to its legitimate core, Plaintiff's Complaint sounds in negligence and products liability." Def. FNC Brief, p. 5. Accordingly, it seeks to dismiss counts II and IV–VII on the ground that they fail to state viable causes of action pursuant to Rule 12(b)(6). Although we DENY defendant's motion to dismiss these claims, we recognize that they may become the subject of a motion for summary judgment, and the five claims factor into our discussion of *forum non conveniens*.

### III. *Discussion.*

**A. *Defendants' Motion to Dismiss on the Ground of Forum Non Conveniens.***

Hillenbrand asks us to dismiss this lawsuit because it really belongs in England, where the plaintiff resides, where the plaintiff purchased the allegedly offending casket, where the casket itself is located, where the interment was conducted, and where anyone who may have made fraudulent misrepresentations is likely to be found. Although we agree with Hillenbrand that England provides an adequate alternative forum, we conclude that Hillenbrand has not sustained its burden of showing that this court is an inconvenient forum or that England provides a more convenient one.

The parties correctly set forth the analysis of *forum non conveniens*, so we need deal with it only summarily. We recently had occasion to address the law as follows:

"[T]he central focus of the forum non conveniens inquiry is convenience." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). In other words, "a trial court may dismiss a suit over which it would normally have jurisdiction if it best serves the convenience of the parties and the ends of justice." *Kamel v. Hill–Rom Co., Inc.*, 108 F.3d 799, 802 (7th Cir.1997) (citations omitted). The forum non conveniens inquiry is guided by a number of considerations. First, an adequate alternative forum must be available to hear the case. *Id.* If this threshold criterion is satisfied, then the court must identify various private and public interest factors and balance them to determine if their weight favors dismissal. *Id.* at 803; *see also ISI International, Inc. v. Borden Ladner Gervais, LLP*, 2001 WL 1382572, at *2 (N.D.Ill.Nov.5, 2001) ("the court must balance the private interests of the litigants and the public interests of the forum to deter-

---

nies the complaint allegation that $75,000 is in controversy. Answer ¶ 4. Although plaintiff nowhere presents facts in support of its assertion that $75,000 is in controversy, we cannot say "to a legal certainty" that it is not. Absent a challenge to the jurisdictional amount by Hillenbrand, we provisionally accept Mr. Penge's allegation. The Seventh Circuit has noted: "Generally, we give plaintiffs the benefit of the doubt in these matters, but a complaint will be dismissed if it 'appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 978 (7th Cir.2000); *Gardynski–Leschuck v. Ford Motor Co.*, 142 F.3d 955, 957 (7th Cir.1998).

mine the superior forum"). [The defendant bears] "the burden of persuasion as to all elements of the forum non conveniens analysis." *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43–44 (3d Cir. 1988) (*Lacey I*); *see also Pyrenee, Ltd. v. Wocom Commodities, Ltd.*, 984 F.Supp. 1148, 1161 (N.D.Ill.1997) ("The defendant has the burden of demonstrating forum non conveniens.").

*In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*, 190 F.Supp.2d 1125, 1128–1129 (S.D.Ind.2002).

### 1. *Existence of an Adequate Alternative Forum.*

■ In resolving Hillenbrand's motion to dismiss, we focus first on the question of whether an adequate alternative forum exists. Hillenbrand has shown in sufficient detail, supported by the affidavit of barrister John Philip Mead,[3] that England would provide an adequate alternative forum, both in the sense that it is an available forum and in the sense that an English court would provide an adequate remedy. After outlining the pertinent facts, Mr. Mead's affidavit satisfactorily addresses, among other things: the English equivalent of our personal jurisdiction; the English equivalent of our service of process; the English analysis of *forum non conveniens* and his opinion that an English court would declare itself convenient with respect to the causes of action at issue here; the adequacy of remedies in an English court, including his opinion that Mr. Penge's breach of contract, negligence, breach of statutory duty (i.e. breach of England's Consumer Protection Act), and misrepresentation and deceit are cognizable; and statutes of limitations. Mead

Aff., ¶¶ 6, 7, 8, 10, 14. Mr. Mead's affidavit contains "precisely the kind of evidence needed to show the adequacy of a foreign forum." *Hyatt International Corp. v. Coco*, 302 F.3d 707, 718 (7th Cir.2002). Mr. Penge does not contest Hillenbrand's argument as to this issue. Accordingly, we conclude that an English court would provide an adequate alternative forum.

### 2. *Private and Public Factors.*

■ Where, as here, an adequate alternative forum exists, we turn to the "private" and "public" factors that might militate in favor of one forum rather than the other. Throughout our discussion we remain aware that the foremost issue is "convenience." *Kamel*, 108 F.3d at 802. Since Hillenbrand bears the burden of showing that England would be a more convenient forum, we pose the question: just how inconvenient must this court be and how convenient does the alternative forum have to be to justify dismissal? The standard is more stringent than a mere balancing of factors would suggest. Dismissal is appropriate "when a trial in the chosen forum would result in *vexation and oppression* to the defendant which would *far outweigh* the plaintiff's convenience or when the chosen forum would generate administrative and legal entanglements for the trial court." *Kamel*, 108 F.3d at 802 (emphasis added). Definitions of "vexation" and "oppression" are scarce. A fair interpretation of their import suggests, at least, that a requiring the defendant to proceed in the plaintiff's chosen forum would be "unnecessarily burdensome." *Piper Aircraft*, 454 U.S. at 255–56 n. 23, 102 S.Ct. at 266, n. 3.[4]

---

**3.** Mr. Mead describes himself as a barrister since 1989 who holds a LLM degree in Comparative, European, and International law, and who practices in employment and personal injury law, including product liability. He professes a "particular interest" in acci-

dents with a "transnational element" and has published and lectured extensively on that topic. Mead Aff. ¶ 3.

**4.** The Supreme Court, relying on its decision in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67

As the following discussion shows, we think that balancing the factors results in no clear-cut determination in favor of either forum. In other words, they are equally (in)convenient. Accordingly, under the "vexation" and "oppression" standard, we cannot conclude that dismissal is warranted.

■ Before turning to our analysis of the determining factors, we note, first, that Mr. Penge's choice of this forum is entitled to some deference, though not as much as if Mr. Penge were a citizen of the United States. *Kamel,* 108 F.3d at 803. Still, less deference does not mean no deference. *Ravelo Monegro v. Rosa,* 211 F.3d 509, 514 (9th Cir.2000). Thus on this issue the scales tip slightly toward Mr. Penge.

Second, our analysis is severely limited by the fact that neither party has yet filed even a preliminary witness or exhibit list and no discovery appears to have been requested or taken. Accordingly, we have no clear idea who may be called to testify at deposition or trial and none as to the documents that may be required for production or that may eventually be submitted as exhibits. It follows that our attempt to determine the impact that the private and public factors may have on the litigation leads to speculation and conjecture.

■ Finally, Hillenbrand focuses its argument for the greater convenience of an English forum on the claims it seeks to have dismissed, while Mr. Penge focuses his argument on the greater convenience of the Indiana forum on the products liability and negligence claims. As might be expected, these different foci affect our analysis of the private and public factors. We may, of course, evaluate the practical factors pertaining to *forum non conveniens* in light of the parties' theories of the case. *Piper Aircraft,* 454 U.S. at 235, 102 S.Ct. at 266. With these points in mind, we proceed to the practical considerations.

### a. *Private Factors.*

■ Pursuant to *Kamel,* the "private" factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for the attendance of unwilling witnesses; (3) the possibility of viewing the premises; and (4) "all other practical problems that make trial of a case easy, efficient and economical." 108 F.3d at 803, *quoting Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).

■ Considering these factors, again we see no net benefit in convenience to either side. Although Hillenbrand argues that most of the pertinent evidence and witnesses are in England—"the entity" that sold the casket, the funeral home and its director, the casket itself, the hospital where Mrs. Penge was treated—it is un-

S.Ct. 839, 91 L.Ed. 1055 (1947) also stated: "Under Gilbert, dismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a *heavy burden* on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Piper Aircraft,* 454 U.S. at 235, 102 S.Ct. at 262 (emphasis added). It added: "In other words, Gilbert held that dismissal may be warranted where a plaintiff chooses a particular forum, not because it is convenient, but solely in order to harass the defendant or take advantage of favorable law. This is precisely the situation in which the Court of Appeals' rule would bar dismissal." *Id.* at n. 15.

The *forum non conveniens* standard seems to us as at least as stringent as the standard for the related procedure of transferring venue pursuant to 28 U.S.C. § 1404(a). The Seventh Circuit holds that, in order for a case to be transferred, the moving party must show that the transferee court would be not merely more convenient but *"clearly* more convenient." *Coffey v. VanDorn Iron Works,* 796 F.2d 217, 219 (7th Cir.1986) (emphasis added); *Heller Financial, Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1293 (7th Cir.1989).

clear why these factors tend to show that a trial in Indiana would be inconvenient and that a trial in England would be more convenient for *Hillenbrand.* Indeed, if Hillenbrand is able to show, as it claims, that counts II, and IV–VII of plaintiff's complaint are legally inadequate, a trial in Indiana is likely to prove far less convenient to Mr. Penge than to Hillenbrand. Similarly, the products liability claim—which focuses on the design and manufacture of the Millennium casket—would appear to be more conveniently triable in Indiana, where Hillenbrand's design and manufacturing processes are undertaken.

More specifically, both parties have avoided identifying "the entity" that sold Mr. Penge the casket. We surmise (without holding) from several suggestions in the pleadings and briefs that "the entity" is English and is not a named defendant in this case. If these conjectures prove true, then the *plaintiff* is more likely than Hillenbrand to find Indiana an inconvenient forum with respect to the counts that Hillenbrand seeks to dismiss. In order to survive summary judgment (and in order to prevail at trial) on those counts, it would seem incumbent on Mr. Penge to produce the pertinent documents—the contracts and warranties allegedly breached; whatever written materials may reveal the nature and scope of any alleged misrepresentations—and witnesses—the person(s) who allegedly misrepresented the virtues of the casket; and the person(s) who allegedly inflicted emotional distress (whether negligently or intentionally). Hillenbrand has, by its answer and affirmative defenses, already laid the groundwork for pointing to the "empty chair" with respect to Mr. Penge's tort claims. *Templin v. Fobes,* 617 N.E.2d 541, 543 (Ind.1993). It is unlikely to be inconvenienced by having to defend this action in this court against witnesses and exhibits that may be impossible for the plaintiff to produce.

Similarly, as Mr. Penge points out, the product liability claim focuses on the design, manufacture, marketing, and crating of the Millennium casket. He alleges that the particular casket at issue here was shipped to England "specially for the Plaintiff." Pl. Brief, p. 8. Although the alleged injury was sustained in England, since the design, manufacture, and marketing were, presumably, accomplished here, pertinent documents and witnesses—most of whom are likely to be employees or contractors of Hillenbrand—are likely to be found here. Indeed, the plaintiff asserts that "[a]ll of the important witnesses are subject to compulsory attendance in Indiana." Pl. Brief, p. 9.

In countering Hillenbrand's invitation to imagine the look on the funeral director's face when subpoenaed to appear in Indiana, Mr. Penge states that "it is hard to imagine how a funeral home director or hospital employee in England could be responsible for a design flaw in a leaking casket manufactured in Indiana." And, perhaps tellingly: "There is really no reason to expect these persons to have any relevant information in this case." Pl. Brief, p. 9. Once again, since the plaintiff bears the burden of persuasion on all of his claims, *he* runs the risk of not producing legally sufficient evidence, whether documentary or testamentary. We envision no inconvenience to Hillenbrand regardless of whether Mr. Penge is able to produce sufficient evidence; if he cannot, then Hillenbrand will win a summary judgment motion; if he can, then Hillenbrand will have the same access to the documents and witnesses that Mr. Penge has. In either case, Hillenbrand suffers no inconvenience, much less vexation or oppression that substantially outweighs Mr. Penge's convenience in having an Indiana forum.

It appears from the briefs that neither party intends to produce the casket itself

in court, whether the trial is in England or here. Nevertheless, one can anticipate the need for one or more experts to examine the casket and prepare testimony with respect to their findings. While it is conceivable that either or both parties would engage English experts if the trial were in England, it is equally conceivable that they would employ American experts and incur the expense of travel to examine the casket. The differences in expert witness expenses in any scenario hardly rise to the level of "vexation" or "oppression."

As to the amenability of witnesses to subpoena power, Hillenbrand has "conditionally" stipulated that, if the case is tried in England: (1) the English equivalents of federal subject matter and personal jurisdiction are present; and (2) Hillenbrand will not invoke lack of jurisdiction with respect to a subpoena for documents or a subpoena for the testimony at trial of any then-current employee. We don't know what these stipulations mean in practice—how far-reaching it is with respect to discovery, for example—and Mr. Penge does not address the stipulation.

In sum, the private factors are, at most, a wash. If all of Mr. Penge's claims survive pre-trial motions and if Hillenbrand runs into all of the obstacles that one can anticipate, an English forum would appear to be somewhat more convenient for Hillenbrand for the reasons it enumerated: the presence there of the casket, the funeral home and its employees, and the hospital and is employees. (Mr. Penge's residence is, of course, irrelevant since he has chosen this forum.) If the case boils down to the products liability and negligence actions, as Hillenbrand argues it should, then it is difficult to see how any forum would be more convenient for Hillenbrand than Indiana.

### b. *Public Factors.*

■ The "public" factors in *forum non conveniens* analysis include: (1) the administrative difficulties stemming from court congestion; (2) the local interest in having localized disputes decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *Kamel,* 108 F.3d at 803, *quoting Piper Aircraft,* 454 U.S. at 241, n. 6, 102 S.Ct. at 258, n. 6.

As to the first factor, this case is unlikely to "generate administrative and legal entanglements for the trial court" that are any more onerous than usual.

■ If the case turns on the products liability claim, we agree with Mr. Penge that Indiana has a real stake in seeing that one of its resident corporations produces and markets goods that satisfy a high standard of performance. We have difficulty assessing the significance to Indiana of Mr. Penge's claims that Hillenbrand seeks to dismiss, because these claims are not yet definitively tied to the three named defendants. If Mr. Penge fails to tie them to Hillenbrand, then we see no reason why Indiana would have a stake in seeing them tried here (any more than there would be justice in trying Hillenbrand in England for the alleged offenses).

The parties interpret factors (3) and (4) as raising a "choice of law" question. We agree, to the extent that choice of law is one factor in determining whether to dismiss this case on the ground of *forum non conveniens.* For the reasons presented by Hillenbrand, we will assume, *solely for purposes of resolving Hillenbrand's forum no conveniens argument,* that the case should be tried under English law.[5] In

---

5. Choice of law is not squarely before us as a free-standing leal issue. We address it here

only as one element in the public factors analysis. *Kamel,* 108 F.3d at 805.

that event, since English law is similar to Indiana law according to barrister Mead's analysis, we should have little if any difficulty applying English law to the facts of this case.

Once again, in balancing the public factors governing convenience, we see no decided advantage in dismissing the case and seeing it tried in England. Hillenbrand has not sustained its burden of showing that a trial in this court "would result in *vexation and oppression*" to itself which "would *far outweigh* the plaintiff's convenience" or that "the chosen forum would generate administrative and legal entanglements for the trial court." It has not persuaded us that a trial in this court would be "unnecessarily burdensome" to it or that a trial in England would be "clearly more convenient." Accordingly, we DENY Hillenbrand's motion to dismiss on the ground of *forum non conveniens*.

B. *Hillenbrand's Motion to Dismiss Counts II, and IV–VII.*

Hillenbrand asks us to dismiss counts II and IV–VII pursuant to Fed.R.Civ.P. 12(b)(6), or, in the alternative, to order Mr. Penge to clarify certain claims or aspects of claims. We are not unsympathetic to Hillenbrand's requests. The complaint in this matter is ten paragraphs, six of which are a bare-bones recitation of facts. Because plaintiff employs the passive voice, it is impossible to discern precisely who did what to whom in several of the counts. As we noted earlier, it is possible that no defendant actually named in the complaint is liable for any misconduct identified in these counts.

Thus, we cannot tell from the complaint who made representations to whom about the performance of the Millennium casket. Count IV, ¶ 19 ("The Millennium casket ... did not perform according to express and implied representations and warranties made by Defendants."). We cannot

tell who entered into contracts. Count V, ¶ 22 ("Plaintiff alleges that there were contracts pertaining to the Millennium casket and that Defendants breached said contract."). We cannot tell who allegedly defrauded whom. Count VI, ¶¶ 25, 26. ("Plaintiff alleges that Defendants represented that the Millennium casket ... was merchantable and reasonably fit for the purpose ·intended, namely to forever seal therein his wife's remains." "Plaintiff alleges that Defendants' representations were false and were relied upon by Plaintiff."). It is difficult to believe that the complaint is the product of inartful pleading. To the contrary, the vagueness is so pervasive that one assumes it was carefully built in.

▪ Notwithstanding these deficiencies, we cannot dismiss a complaint unless the party moving to dismiss shows that "the pleadings themselves fail to provide a basis for any claim for relief under any set of facts." *Owner–Operator Independent Drivers Assoc. v. Mayflower Transit, Inc.,* 161 F.Supp.2d 948 (S.D.Ind. 2001), quoting *Ed Miniat, Inc. v. Globe Life Ins. Group Inc.,* 805 F.2d 732, 733 (7th Cir.1986), *cert. denied,* 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987). Dismissal is appropriate only if it appears to a certainty that the plaintiff cannot establish any set of facts which would entitle her to the relief sought. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Mosley v. Klincar,* 947 F.2d 1338, 1339 (7th Cir. 1991). Accordingly, we treat all well-pleaded factual allegations as true and we construe all inferences that reasonably may be drawn from those facts in a light most favorable to the party opposing the motion. *Szumny v. American General Finance,* 246 F.3d 1065, 1067 (7th Cir.2001); *Latuszkin v. City of Chicago,* 250 F.3d 502, 504 (7th Cir.2001).

Plaintiff's bare-bones recitation of facts is sufficient to withstand Hillenbrand's motion to dismiss under our notice pleading regime. A complaint need include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). Such a statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Such notice pleading is applicable in all but a handful of federal cases. It "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 998, 152 L.Ed.2d 1, (2002); *O'Grady v. Village of Libertyville,* 304 F.3d 719, 722 (7th Cir.2002) (complaint need not articulate legal theory to satisfy factual statements); *Walker v. Benjamin,* 293 F.3d 1030, 1039 (7th Cir.2002) (complaint need not set forth in detail facts on which claim is based). Accordingly, notwithstanding the complaint's deficiencies—or perhaps because of them—Hillenbrand should have little trouble in focusing simple and straightforward discovery in order to clarify the case.

For these reasons, we DENY Hillenbrand's motion to dismiss.